1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | GERALD A. ENGLER
Senior Assistant Attorney General
4 | JULIET B. HALEY
Deputy Attorney General
5 | ERIC D. SHARE, State Bar No. 151230
Deputy Attorney General
6 | 455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
7 | Telephone: (415) 703-1375
Fax: (415) 703-1234
8 | Email: Eric.Share@doj.ca.gov

9 | Attorneys for Respondent

10

11 | IN THE UNITED STATES DISTRICT COURT

12 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

13 | SAN FRANCISCO DIVISION

14

15 | **ANTONE LEE,**

Petitioner,

C 08-1200 PJH (PR)

16 | **ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**

17 | v.

18 | **DERRAL G. ADAMS, Warden,**

Respondent.

19

20

21 | Respondent, in answer to the Petition for Writ of Habeas Corpus and Order to Show

22 | Cause, states:

23 | **I.**

24 | **CUSTODY**

25 | Petitioner is lawfully in custody of the California Department of Corrections and

26 | Rehabilitation and is serving a term of 60 years to life in prison. Exh. A at 563-565, 568-570; *see*

27

28

Answer to Petition for Writ of Habeas Corpus

*Antone Lee v. Derral Adams, Warden*
C 08-1200 PJH (PR)

1  *also* Exh. G at 1.[1/]  Petitioner was found guilty by a jury of second degree murder.  The jury also

2  found that petitioner had discharged a firearm causing the victim's death.  Cal. Penal Code §§ 187,

3  12022.5(a)(1), 12022.53(b)-(d).  Exh. A at 541, 543, 551.  In a bifurcated proceeding, the trial court

4  found true that petitioner had been previously convicted of assault with a deadly weapon, and that

5  this conviction constituted a serious prior felony (Cal. Penal Code § 667(a)(1)) and a "strike" under

6  California's "Three Strikes" lw (Cal. Penal Code § 1170.12(c)(1)).  Exh. A at 556, 558.

7           The California Court of Appeal, First Appellate District, Division One, affirmed the

8  judgment in an unpublished decision on August 11, 2006.  Exh. G.  The California Supreme Court

9  denied petitioner's Petition for Review on October 18, 2006.  Exh. I.  The California Supreme Court

10  also denied petitioner's Petition for Writ of Habeas Corpus on September 12, 2007.  Exh. K.

11                                                  **II.**

12                                          **<u>EXHAUSTION</u>**

13           The question of whether petitioner has fully exhausted the claims raised in his federal

14  Petition for Writ of Habeas Corpus in the California state courts is made difficult because the claims

15  raised here are not always fully consistent with the claims raised in the state courts.  Petitioner's first

16  claim here is that his conviction was not supported by sufficient evidence that he was the perpetrator

17  of the murder.  This claim was originally raised in a pro se Supplemental Brief petitioner filed in the

18  California Court of Appeal.  Exh. F.  In his state court brief, petitioner contended that eyewitness

19  testimony at trial was unreliable and the prosecution's attempt to discredit defense witnesses was

20  ineffectual.  Exh. F.  Petitioner raised this same claim in his Petition for Review in the California

21  Supreme Court.  Exh. H at 3.

22           In his claim for federal habeas relief presented to this Court, petitioner again labels his

23  claim as one of "insufficiency of the evidence."  The claim, however, as more fully discussed in

24  respondent's Memorandum of Points and Authorities in Support of its Answer, bares little

25  resemblance to the one raised and presented for resolution in the state courts.  To the extent

26

27

_____

28       1. We have changed the name of the "Respondent" in the caption for this case from Ken
Clark to Derral Adams to reflect the current warden of the prison where petitioner is incarcerated.

Answer to Petition for Writ of Habeas Corpus                    *Antone Lee v. Derral Adams, Warden*
                                                                        C 08-1200 PJH (PR)

1  petitioner changes the grounds for his claim of insufficiency of the evidence in this Court from the

2  one raised in the state courts, the claim is unexhausted. *See* 28 U.S.C. § 2254(b)(1). To the extent

3  the claim is the same as that raised in the state courts, the state courts correctly rejected the claim.

4        Petitioner's second claim is that the California courts erroneously denied his claim that the

5  cumulative effect of several instances of prosecutorial misconduct required reversal of his

6  conviction. As more fully discussed in respondent's Memorandum of Points and Authorities in

7  Support of Answer, as with the previous claim, this claim for federal habeas relief is not completely

8  consistent with that raised in the California Supreme Court. To the extent the claim is exhausted,

9  it fails to present a ground for granting federal habeas relief.

10        Petitioner's claim that the trial court erred in instructing the jury with a standard California

11  jury instruction that certain actions by a defendant might be considered by the jury as showing a

12  consciousness of guilt has been exhausted in the state courts.

13        Petitioner's final claim, that his Sixth Amendment rights were violated when the

14  sentencing court imposed an upper-term sentence based on facts not tried an found by a jury was not

15  presented to any state court for resolution and, therefore, is unexhausted. Giving petitioner an

16  opportunity to exhaust this claim, however, would be an exercise in futility. As fully explained in

17  Respondent's Memorandum of Points and Authorities in Support of Answer, petitioner did not

18  receive an upper-term sentence.

19  <div align="center">**III.**</div>

20  <div align="center">**PETITIONER'S FEDERAL CONSTITUTIONAL RIGHTS WERE NOT VIOLATED**</div>

21        Respondent denies that petitioner has suffered any deprivation of his federal constitutional

22  rights entitling him to federal habeas corpus relief. The lack of merit in petitioner's claims in his

23  federal petition is fully explained in Respondent's Memorandum of Points and Authorities in

24  Support of Answer.

25  <div align="center">**IV.**</div>

26  <div align="center">**EXHIBITS IN SUPPORT OF ANSWER**</div>

27        Respondent is lodging as exhibits in support of this Answer, and hereby incorporates the

28  following documents: Clerk's Transcript of petitioner's trial in the Alameda County Superior Court

Answer to Petition for Writ of Habeas Corpus               *Antone Lee v. Derral Adams, Warden*
                                                                 C 08-1200 PJH (PR)

1  (Exh. A—3 volumes); Reporter's Transcript of petitioner's trial in the Alameda County Superior

2  Court (Exh. B—9 volumes); Appellant's Opening Brief in the California Court of Appeal (Exh. C);

3  Respondent's Brief in the California Court of Appeal (Exh. D); Appellant's Reply Brief in the

4  California Court of Appeal (Exh. E); Appellant's Supplemental Brief (filed in pro se) in the

5  California Court of Appeal (Exh. F); August 11, 2006, unpublished opinion of the California Court

6  of Appeal (Exh. G); petitioner's Petition for Review in the California Supreme Court (Exh. H);

7  October 18, 2006, California Supreme Court order denying petition for review (Exh. I); petitioner's

8  Petition for Writ of Habeas Corpus in the California Supreme Court (Exh. J); docket sheet from the

9  California Supreme Court, indicating petitioner's Petition for Writ of Habeas Corpus was denied on

10  September 12, 2007 (Exh. K).

<div align="center">V.</div>

<div align="center">**MEMORANDUM OF POINTS AND AUTHORITIES**</div>

13       In support of this Answer, respondent incorporates the accompanying Memorandum of

14  Points and Authorities.

<div align="center">**CONCLUSION**</div>

16       Respondent denies that the judgment and commitment underlying petitioner's confinement

17  are invalid in any respect, that any of petitioner's federal constitutional rights have been violated in

18  any way, and that any remand, reversal, or relief in any form is appropriate.

19       WHEREFORE, respondent respectfully requests that the Order to Show Cause be

20  discharged, the petition denied, the proceedings terminated, and judgment entered accordingly.

Answer to Petition for Writ of Habeas Corpus                          *Antone Lee v. Derral Adams, Warden*
                                                                     C 08-1200 PJH (PR)

1    Dated:  July 10, 2008

2                    Respectfully submitted,

3                    EDMUND G. BROWN JR.
                     Attorney General of the State of California

4                    DANE R. GILLETTE
                     Chief Assistant Attorney General
5
                     GERALD A. ENGLER
6                    Senior Assistant Attorney General

7                    JULIET B. HALEY
                     Deputy Attorney General

8

9

10                   _____
                     ERIC D. SHARE
11                   Deputy Attorney General
                     Attorneys for Respondent
12

13       20119147.wpd
14       SF2008401294

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Answer to Petition for Writ of Habeas Corpus                *Antone Lee v. Derral Adams, Warden*
                                                            C 08-1200 PJH (PR)

1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DANE R. GILLETTE
    Chief Assistant Attorney General
3   GERALD A. ENGLER
    Senior Assistant Attorney General
4   JULIET B. HALEY
    Deputy Attorney General
5   ERIC D. SHARE, State Bar No. 151230
    Deputy Attorney General
6     455 Golden Gate Avenue, Suite 11000
      San Francisco, CA 94102-7004
7     Telephone: (415) 703-1375
      Fax: (415) 703-1234
8     Email: Eric.Share@doj.ca.gov

9   Attorneys for Respondent

10               IN THE UNITED STATES DISTRICT COURT

11            FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                  SAN FRANCISCO DIVISION

13
    ANTONE LEE,                                    C 08-1200 PJH (PR)
14
                                 Petitioner,
15
            v.
16
    DERRAL G. ADAMS, Warden,
17
                                 Respondent.
18

19
    MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER
20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

Page

3    STATEMENT OF THE CASE                                                    1

4    STATEMENT OF FACTS                                                       2

5    ARGUMENT                                                                 4

6    I.    THE EVIDENCE WAS SUFFICIENT TO SUPPORT
           PETITIONER'S CONVICTION                                            4
7
           A.    This Case Is Governed By The AEDPA                           4
8
           B.    The State Court Correctly Found That Sufficient Evidence Supported
9                Petitioner's Conviction                                      5

10   II.   PETITIONER'S ALLEGATIONS OF PROSECUTORIAL
           MISCONDUCT DO NOT ESTABLISH GROUNDS FOR
11         GRANTING FEDERAL HABEAS RELIEF                                     7

12         A.    Failure To Completely Exhaust State Remedies                 8

13         B.    The California Court Correctly Found That Petitioner Was Not Prejudice By
                 The Claims Instances Of Prosecutorial Misconduct             8
14
     III.  PETITIONER'S CONSTITUTIONAL RIGHTS WERE NOT
15         VIOLATED BY THE GIVING OF A JURY INSTRUCTION ON
           CONSCIOUSNESS OF GUILT                                            12
16
     IV.   PETITIONER DID NOT RECEIVE AN UPPER-TERM
17         SENTENCE                                                          17

18   CONCLUSION                                                              19

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page

**Cases**

*Boyde v. California*
494 U.S. 370 (1990)                                                16

*Brecht v. Abrahamson*
507 U.S. 619 (1993)                                            12, 16

*Chapman v. California*
386 U.S. 18 (1967)                                                 10

*Cunningham v. California*
549 U.S. 270
[127 S.Ct. 856
166 L.Ed.2d 856] (2007)                                            17

*Donnelly v. DeChristoforo*
416 U.S. 637 (1974)                                        12, 13, 16

*Duncan v. Henry*
513 U.S. 364 (1995)                                                 6

*Estelle v. McGuire*
502 U.S. 62 (1991)                                                 16

*Hill v. Roe*
321 F.3d 787 (2002)                                                14

*In re Waltreus*
62 Cal.2d 218 (1965)                                               13

*Johnson v. Zenon*
88 F.3d 828 (9th Cir. 1996)                                         6

*Lockyer v. Andrade*
538 U.S. 63 (2003)                                                  4

*O'Bremski v. Maass*
915 F.2d 418 (9th Cir. 1990)                                        6

*O'Sullivan v. Boerckel*
526 U.S. 838 (1999)                                                 6

*People v. Black*
41 Cal.4th 799 (2007)                                              17

*People v. Coffman and Marlow*
(2004) 34 Cal.4th 1                                             13, 14

**TABLE OF AUTHORITIES  (continued)**

|  | Page |
|---|---|
| *People v. Monterroso*<br>34 Cal.4th 743 (2004) | 10 |
| *Picard v. Connor*<br>404 U.S. 270 (1971) | 6 |
| *Rose v. Lundy*<br>455 U.S. 509 (1982) | 5 |
| *Schiro v. Landrigan*<br>__ U.S. __<br>[127 S.Ct. 1933<br>167 L.Ed.2d 836] (2007) | 4 |
| *White v. Lewis*<br>874 F.2d 599 (9th Cir. 1989) | 6 |
| *Woodford v. Visciotti*<br>537 U.S. 19 (2002) | 4 |
| *Ylst v. Nunnemaker*<br>501 U.S. 797 (1991) | 14 |

**Statutes**

| 28 United States Code | |
|---|---|
| § 2254(b)(1) | 5, 8, 17 |
| § 2254(d)(1) | 4 |

| California Penal Code | |
|---|---|
| § 187 | 1 |
| § 190(a) | 18 |
| § 245(a)(1) | 1 |
| § 667(a)(1) | 1, 18 |
| §1170.12(c)(1) | 1, 18 |
| § 12022.5(a)(1) | 1 |
| § 12022.53(b)-(d) | 1 |

**Other Authorities**

| Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") | 4 |
|---|---|

| California Jury Instructions – Criminal | |
|---|---|
| No. 2.04 | 12-14, 16 |
| No. 2.15 | 14 |

| Rules Governing 28 U.S.C. § 2254 Cases,<br>Rule 4 and Advisory Committee Notes | 6 |
|---|---|

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  JULIET B. HALEY
   Deputy Attorney General
5  ERIC D. SHARE, State Bar No. 151230
   Deputy Attorney General
6     455 Golden Gate Avenue, Suite 11000
      San Francisco, CA  94102-7004
7     Telephone:  (415) 703-1375
      Fax:  (415) 703-1234
8     Email:  Eric.Share@doj.ca.gov

9  Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11            FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13
   ANTONE LEE,                                C 08-1200 PJH (PR)
14
                              Petitioner,     **MEMORANDUM OF POINTS**
15                                            **AND AUTHORITIES IN**
          v.                                  **SUPPORT OF ANSWER**
16
   DERRAL G. ADAMS, Warden,
17
                              Respondent.
18

19

20                    **STATEMENT OF THE CASE**

21          On April 26, 2005, an Alameda County jury found petitioner guilty of second degree

22  murder and also found that he had discharged a firearm causing the victim's death. Cal. Penal Code

23  §§ 187, 12022.5(a)(1), 12022.53(b)-(d). Exh. A (Clerk's Transcript) at 541, 543, 551.  In a

24  bifurcated court trial on May 6, 2005, the trial court found true that petitioner had been previously

25  convicted of assault with a deadly weapon (Cal. Penal Code § 245(a)(1)), and that this conviction

26  constituted a serious prior felony (Cal. Penal Code § 667(a)(1)) and a "strike" under California's

27  "Three Strikes" law (Cal. Penal Code §1170.12(c)(1)). Exh. A at 556, 558. On July 12, 2005, the

28  trial court sentenced petitioner to a total prison term of 60 years to life. Exh. A at 563-565, 568-570.

1    The California Court of Appeal, First Appellate District, Division One, affirmed the

2  judgment in an unpublished opinion on August 11, 2006.  Exh. G.  Petitioner filed a Petition for

3  Review in the California Supreme Court on September 12, 2006.  Exh. H.  That court denied the

4  Petition for Review on October 18, 2006, in a "silent" denial.  Exh. I.

5    On April 17, 1007, after the California Supreme Court had denied his Petition for Review,

6  petitioner filed a Petition for Writ of Habeas Corpus in the California Supreme Court.  Exh. J.  That

7  court denied the petition on September 12, 2007.  Exh. K.

8    Petitioner filed a federal Petition for Writ of Habeas Corpus in this Court on February 28,

9  2008, raising five claims.  On April 11, 2008, this Court issued an Order to Show Cause directing

10  respondent to file a response as to four of those claims.  (This Court found that one claim—that the

11  California court erred in applying California law to petitioner's sentence (claim number

12  three)—involved only a state law issue which cannot be the basis for federal habeas relief.

13

14                              **STATEMENT OF FACTS**

15    We adopt the Statement of Facts from the California Court of Appeal's unpublished

16  decision and set it out here for this Court's convenience.[1]

17    On the evening of January 6, 2003, Roderick Kelly was shot in the abdomen while
18  at Palma Ceia Park in Hayward. Mr. Kelly died later that night, without telling police who
     shot him. The only person who saw the shooting appears to have been a man who had
19  been in the park that night, looking for his girlfriend's purse, which had been stolen from
     a nearby location. The man described the person who shot Mr. Kelly to police as a black
     man, 26 to 27 years old. He was slouching down, but looked to be approximately 5 feet
20  5 inches to 5 feet 6 inches tall and 130 pounds,[2] wearing all dark clothing. Police found
     a cellular telephone and a cigarette lighter in the area where Mr. Kelly was shot. They did
21  not find any shell casings, suggesting that the weapon used against Mr. Kelly had been a
     revolver.
22    The police investigation led police to believe that someone named "Tone" should be
     located. They learned that defendant went by the name "Tone." They also learned that
23  defendant and Mr. Kelly lived with Rudolph Calagno in a house that he was renting. Mr.
     Kelly apparently had taken and sold a generator belonging to defendant, which led to an

24

_____

25    1. A more complete statement of facts, with citations to the Reporter's Transcript, can be
26  found in Respondent's Brief filed in the California Court of Appeal.  *See* Exh. D at 2-15; *see also*
     Exh. B (Reporter's Transcript).
27
      2. According to defendant's girlfriend, defendant weighed between 185 and 195 pounds at
28  the time of the crime. According to the probation report, defendant is approximately 6 feet tall.

argument between defendant and Mr. Kelly a couple of days before the shooting. There also was evidence that a couple of weeks before the shooting defendant was complaining that Mr. Kelly was demanding half of everything he owned. On January 6, Mr. Calagno overheard part of a conversation between defendant and Mr. Kelly about taking half the money from the sale of the generator. A short time later Mr. Calagno left with an acquaintance, Mike Webb. They went to Mr. Webb's car, which was parked next to the park. Defendant met them at the car, wearing dark pants and a dark sweatshirt. Defendant asked for a light, and Mr. Calagno gave him a disposable lighter. Defendant walked away. A few minutes later, Mr. Calagno and Mr. Webb heard gunshots. Mr. Calagno saw defendant running across the park.[3/]

Defendant's girlfriend, Alysia Duran, testified that she picked defendant up on January 6, and had taken him to Mr. Calagno's house. Several people, including Mr. Kelly, were there. It appeared that the room Ms. Duran and defendant shared had been broken into. Defendant had an angry conversation with Mr. Kelly about it. Mr. Kelly told defendant he wanted half of everything Ms. Duran later dropped defendant off at a gas station, drove around the park twice, to see what was going on, and then went to the home of Adam O'Dell, finding Mr. O'Dell there with Joseph Blackmon. Mr. O'Dell testified that at some point he ran into defendant, who pulled out a .38 revolver, telling Mr. O'Dell that this was the night he was going to shoot Mr. Kelly. Ms. Duran, Mr. O'Dell and Mr. Blackmon went from Mr. O'Dell's house to the park, believing that something was going to happen there.

Mr. O'Dell returned to his house. Ms. Duran showed up, and then defendant showed up, jumping in through the window, sweating as if he had been running, and carrying two bullet casings.[4/] Ms. Duran testified that she came out of the bathroom to see some clothing on the ground. She heard Mr. O'Dell say, "[W]hat about the clothes?" She stated that if something needed to be done, she would do it. She took the clothes to an industrial area, where she poured gasoline on them and burned them. She spilled gasoline on herself, with the result that she also burned her sweatshirt and about six inches off her hair. She then returned to Mr. O'Dell's house, after which she and defendant went to a motel. At some point, Mr. O'Dell gave Ms. Duran some shell casings, which she threw out on the freeway. Mr. O'Dell told her that Phil Silva had taken the gun and that the gun had been destroyed with a cutting torch. Mr. O'Dell also told the police that Mr. Silva took the gun. Each of them also stated, however, that Mr. O'Dell later sought to buy the gun, or that Ms. Duran later sought to sell it.

The cell phone found in the park was one of two matching phones that belonged to

3. At trial, Mr. Calagno denied that he remembered telling the police many of things recorded in his statement. He also testified that he only saw "someone" jumping up and down. Mr. Webb made a statement to the police that tended to show that defendant shot Mr. Kelly. At trial, Mr. Webb at first denied remembering most of that statement, and denied remembering much of anything about the events surrounding Mr. Kelly's death. The following day, Mr. Webb, who was in a drug treatment program, testified that he had been untruthful the previous day. He didn't feel good about his testimony, feeling as if he had thrown everything he had learned at treatment out the window. He decided to tell the truth, recognizing that he was there for himself, not for anyone else. Mr. Webb then stated that he did in fact recall many of the events surrounding the shooting and that everything he had said in his statement to the police was true.

4. At trial, Mr. O'Dell essentially recanted his statement to the police, testifying that he did not remember the events he had described in his statement, and explaining that he had made things up to help himself in his own criminal case.

1  Ms. Duran.  Defendant had been using that phone, and had used it twice on January 5 to call another girlfriend.  Ms. Duran cancelled the phone on January 7, the day after the
2  shooting, reporting that it had been stolen.

3  Exh. G at 2-4 (footnotes in original).

4  <center>**ARGUMENT**</center>

5  <center>**I.**</center>

6  **THE EVIDENCE WAS SUFFICIENT TO SUPPORT PETITIONER'S CONVICTION**
7

8    Petitioner's first claim is that his conviction was not supported by sufficient evidence that

9  he was the perpetrator of the crime.  His claim in this Court, however, is not entirely consistent with

10  the claim he presented to the state court.  To the extent petitioner attempts to change his claim now,

11  the claim is unexhausted.  To the extent the claim is the same as that raised in the state courts, the

12  claim fails.  Applying controlling United States Supreme Court law, the California Court of Appeal

13  rejected his contention that insufficient evidence supported his conviction.  Petitioner cannot show

14  that the state court's determination was contrary to, or an unreasonable application of, clearly

15  established Supreme Court law.

16    **A.** **This Case Is Governed By The AEDPA**

17    This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

18  ("AEDPA"), which imposes a "highly deferential" standard for evaluating state court rulings and

19  "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537

20  U.S. 19, 24 (2002) (per curium).  Under AEDPA, the federal court has no authority to grant habeas

21  relief unless the state court's ruling was "contrary to, or involved an unreasonable application of,

22  clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). "The question under AEDPA

23  is not whether a federal court believes the state court's determination was incorrect but whether that

24  determination was unreasonable—a substantially higher threshold." *Schiro v. Landrigan*, __ U.S.

25  __ [127 S.Ct. 1933, 1939, 167 L.Ed.2d 836, 844] (2007); *accord Lockyer v. Andrade*, 538 U.S. 63,

26  75 (2003).  The petitioner bears the burden of showing that the state court's decision was

27  unreasonable. *Woodford v. Visciotti*, 537 U.S. at 25.

28

**B.    The State Court Correctly Found That Sufficient Evidence Supported Petitioner's Conviction**

In his opening brief on behalf of petitioner in the California Court of Appeal, petitioner's appellate counsel did not argue that petitioner's conviction was not supported by sufficient evidence. Instead, petitioner sought leave of the California appellate court to file a pro se letter brief raising the claim. The court allowed petitioner to do so. Exh. G at 4, n. 6; *see also* Exh. C.[5]

In his pro se state brief, petitioner contended that eyewitness testimony at trial was unreliable and the prosecution's attempt to discredit certain defense witnesses was ineffectual. Exh. F. Petitioner raised this same claim in his Petition for Review in the California Supreme Court. Exh. H at 3. In his claim for federal habeas relief presented to this Court, petitioner again labels his claim as one of "insufficiency of the evidence." The claim, however, bares little resemblance to the one raised and presented for resolution in the state courts. Here, petitioner alleges: "witnesses conferred with one another on their stories, lied to divert suspicion from [*sic*], failed to agree on basic facts, used drugs, committed acts of moral turpitude, and suffered from police and prosecution pressure, as well as, [illegible] lack of time and lack of opportunity to observe." Pet. at Ground 1. He further contends the trial court erred in admitting a witness's preliminary hearing testimony as a prior inconsistent statement. He also attacks various other aspects of several witnesses' testimony.

To the extent petitioner changes the grounds for his claim of insufficiency of evidence in this Court from the one raised in the state courts, the claim is unexhausted. For compelling reasons of comity, a defendant convicted in state court must first exhaust all available state remedies before turning to the federal courts for habeas relief. 28 U.S.C. § 2254(b)(1),[6] *Rose v. Lundy*, 455 U.S. 509,

---

5. The California appellate court stated: "As the People have pointed out in their opposition to defendant's application to file his letter brief, the general rule is that the courts will not entertain documents filed in pro per by a defendant who is represented by an attorney or record. (Citing *In re Barnett* (2003) 31 Cal.4th 466, 469 and *People v. Mattson* (1959) 51 Cal.2d 777, 797-798.) We have chosen to depart from this rule and consider the issues raised by defendant. As we find it raises no colorable issue, we have not asked the People to file a responsive pleading." Exh. __ at 4, n. 6.

6. The statute states in relevant part: "An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State."

1    518-19 (1982); *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990); *White v. Lewis*, 874 F.2d

2    599, 602 (9th Cir. 1989); Rules Governing 28 U.S.C. § 2254 Cases, Rule 4 and Advisory Committee

3    Notes. In order to exhaust an issue, the defendant must "fairly present" the specific factual and legal

4    bases for the federal claim to the state's highest court. *Duncan v. Henry*, 513 U.S. 364, 365 (1995)

5    (per curiam); *Picard v. Connor*, 404 U.S. 270, 275 (1971). "[S]tate prisoners must give the state

6    courts one full opportunity to resolve any constitutional issues by invoking one complete round of

7    the State's established appellate review process," including discretionary review to the state supreme

8    court if that is the state's practice. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Johnson v.*

9    *Zenon*, 88 F.3d 828, 828 (9th Cir. 1996) (petitioner must have "'fairly presented' his federal claim

10   to the highest state court with jurisdiction to consider it"). Hence, to the extent petitioner attempts

11   to expand on and augment his claim of insufficiency of the evidence, it cannot form the basis for

12   federal habeas relief. This Court cannot grant relief on claims never presented to the state courts.

13           To the extent the claim is the same as that raised in the state courts, the California appellate

14   court correctly rejected the claim. As that court stated in its opinion:

15           Defendant, in a pro per letter brief, [footnote omitted] contends that the evidence was
         insufficient to support the jury's verdict. He points out that the witness to the shooting
16       estimated the shooter as significantly shorter and lighter than defendant. He points out
         that the testimony of some of the witnesses at trial tended to exonerate him and he asserts
17       that the prosecution's attempts to discredit defense witnesses were ineffectual.
             "In *Jackson v. Virginia* (1979) 443 U.S. 307, 318-319, the United States Supreme
18       Court held, with regard to the standard of review of the sufficiency of the evidence
         supporting a criminal conviction, that '[t]he critical inquiry . . . [is] . . . whether the record
19       evidence could reasonably support a finding of guilt beyond a reasonable doubt . . . .
         [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence
20       at the trial established guilt beyond a reasonable doubt." [Citation.] Instead, the relevant
         question is whether, after viewing the evidence in the light most favorable to the
21       prosecution, *any* rational trier of fact could have found the essential elements of the crime
         beyond a reasonable doubt.'   An identical standard applies under the California
22       Constitution. [Citation.] 'In determining whether a reasonable trier of fact could have
         found defendant guilty beyond a reasonable doubt, the appellate court "must view the
23       evidence in a light most favorable to respondent and presume in support of the judgment
         the existence of every fact the trier [of fact] could reasonable deduce from the evidence."'"
24       (*People v. Staten* (2000) 24 Cal.4th 434, 460.) Here, there was evidence that defendant
         stated he was going to shoot Mr. Kelly on the night in question. Defendant was dressed
25       in the manner described by the eyewitness. Defendant was seen at the park shortly before
         the crime, and shortly after it jumped through a window into the home of an acquaintance
26       or friend, carrying bullet casings.
             Notwithstanding arguments made by the defense, the jury reasonably could have
27       concluded that the eyewitness mistook the size and weight of the shooter. Although
         several witnesses changed their stories by the time of trial, the jury also was entitled to
28       believe the statements made by witnesses to the police, and to disbelieve the witnesses'

1    contradictory trial testimony.  In sum, although the evidence was inconsistent and times
     contradictory, there was substantial evidence supporting the jury's findings of guilt beyond
2    a reasonable doubt.

3    Exh. G at 4-5.  The California Supreme Court denied petitioner's Petition for Review raising this

4    claim in a "silent" denial.  Exh. I.

5           The California appellate court correctly identified and applied controlling Supreme Court

6    law in assessing petitioner's claim of insufficiency of the evidence.  Using the standard of review

7    articulated by the Supreme Court in *Jackson v. Virginia*, the court found that the record evidence

8    could support a finding of guilt beyond a reasonable doubt.  That there may have been

9    inconsistencies in testimony, or that witnesses' trial testimony may have varied from their earlier

10   statements to police, does not establish insufficiency of the evidence.  The evidence as a whole,

11   when viewed in the light most favorable to the prosecution, constituted sufficiency evidence of guilt.

12          Under *Jackson v. Virginia*, the state court's resolution of petitioner's claim is not

13   unreasonable.  Even were petitioner able to show that there could be disagreement with the state

14   court's resolution of the claim, that is inadequate to provide a basis for federal habeas relief.

15   Because the state court's resolution of the claim is not contrary to, or an unreasonable application

16   of, *Jackson v. Virginia*, petitioner's claim for federal habeas relief must fail.

17                                          **II.**

18   **PETITIONER'S ALLEGATIONS OF PROSECUTORIAL
     MISCONDUCT DO NOT ESTABLISH GROUNDS FOR GRANTING
19   FEDERAL HABEAS RELIEF**

20          Petitioner's next claim is that the California courts erroneously denied his claim that the

21   cumulative effect of several instances of prosecutorial misconduct required reversal of his

22   conviction.  Petitioner's claim here, and in the California Court of Appeal, centers on the

23   prosecutor's cross-examination of a defense witness and comments made by the prosecutor during

24   closing argument.  The California appellate court found that none of the instances of alleged

25   prosecutorial misconduct had a prejudicial effect on the verdict.  Petitioner renewed only one aspect

26   of his claim of prosecutorial misconduct in his Petition for Review in the California Supreme Court.

27   As already indicated, that court denied review.  The state court's resolution of petitioner's claim was

28   not contrary to, or an unreasonable application of, Supreme Court law.

1    **A.    Failure To Completely Exhaust State Remedies**

2    As with the previous claim, this claim for federal habeas relief is not the same as that

3    petitioner presented to the California Supreme Court. Here, as in the California Court of Appeal,

4    petitioner complained of the prosecutor's cross-examination of a defense witness and also

5    highlighted several statements in the prosecutor's closing argument that petitioner believed were

6    objectionable. Exh. C at 31-35; *see also* Exh. D at 16-23; Exh. E at 1-3. The California Court of

7    Appeal addressed all of petitioner's claims in its opinion. Exh. G at 5-8. In his Petition for Review

8    in the California Supreme Court, however, petitioner only presented part of his earlier broader claim

9    of prosecutorial misconduct. More specifically, he renewed his claim that the prosecutor committed

10    misconduct in closing argument, but did not argue that the prosecutor committed misconduct in

11    cross-examining a defense witness. Exh. H at 3-4.

12    Because petitioner did not present his claim of alleged prosecutorial misconduct in the

13    cross-examination of a witness to the California Supreme Court, that portion of his claim is

14    unexhausted and cannot form the basis for federal habeas relief. 28 U.S.C. § 2254(b)(1). In

15    addressing that portion of petitioner's claim, respondent does so only to provide the complete context

16    of the California appellate court's determination of petitioner's claim of prosecutorial misconduct.

17    By explaining the California court's resolution of petitioner's entire claim, we do not acquiesce to

18    its presentation here as a basis for federal relief.

19    **B.    The California Court Correctly Found That Petitioner Was Not Prejudice By
         The Claims Instances Of Prosecutorial Misconduct**

20

21    As the California Court of Appeal summarized, in that court petitioner contended "that his

22    conviction should be reversed because of the cumulative effect of three instances of prosecutorial

23    misconduct, citing the prosecutor's cross-examination of defense witness Phil Silva and two portions

24    of the prosecutor's closing argument." Exh. G at 5. The California appellate court set out the

25    controlling California law on a claim of prosecutorial misconduct. "A prosecutor's conduct violates

26    the Fourteenth Amendment when it infects the trial with such unfairness as to make the conviction

27    a denial of due process. (*People v. Monterroso* (2004) 34 Cal.4th 743, 785.) When the misconduct

28    does not render the trial fundamentally unfair, it still violates California law if it involves the use of

1   deceptive or reprehensible methods to attempt to persuade either the court or the jury. (*Ibid.*) Even

2   then, the reviewing court must decide whether there is a reasonable probability that the misconduct

3   influenced the verdict. (*Ibid.*)" Exh. G at 5.

4      The California appellate court also set out the factual background relevant to petitioner's

5   claim that the prosecutor committed misconduct in cross-examining defense witness Phil Silva.

> Mr. Silva, who was identified by Ms. Duran and Mr. O'Dell as the person who was to, or did, destroy the gun, testified that defendant is his friend and works in his construction business. He testified that he does not know Adam O'Dell, although he knows who he is. He knows Alysia Duran. He testified that Ms. Duran never gave him a gun, and that he never told anyone that any gun had been cut up and destroyed. On cross-examination, the prosecutor asked if defense counsel told Mr. Silva he was not supposed to talk to any other witnesses. Mr. Silva replied that he did not remember. The prosecutor asked if he knew that he was not allowed to talk to other witnesses. Defense counsel's objection was overruled, after which Mr. Silva stated, "If that's what you're telling, yeah, I know that now then." Mr. Silva agreed that he had visited defendant in jail on several occasions, and had provided funds for defendant to spend in jail. Defendant contends that the prosecution's line of questioning was misconduct, implying that Mr. Silva had acted improperly. Defendant asserts that the prosecutorial misconduct was exacerbated when, during closing argument, the prosecutor mentioned the point in response to the defense argument that Mr. Silva was telling the truth.

14   Exh. G at 6.[2/]

15      The California Court of Appeal did not definitively resolve whether the prosecutor's cross-

16   examination constituted misconduct. Instead, the appellate court found that "[o]n this record, the

17   prosecutor's question and comments, even if improper, could not reasonably have had any effect on

18   the verdict." Exh. G at 6. As the court explained:

> While Mr. Silva's testimony was favorable to defendant, he was not a key witness. His testimony tended to show defendant had a good side, and tended to show Mr. O'Dell's statements to the police might not be trustworthy. The jury was aware of Mr. O'Dell's

---

22      7. In closing argument, "Defense counsel pointed out that Mr. Silva's testimony was inconsistent with Mr. O'Dell's testimony and statement to the police, asserting that Mr. Silva was the more credible person. The prosecutor later argued, '[Defense counsel] says Phil Silva came in here, he's the only one that had any guts to stand up here and tell you he wasn't involved. Why would he say anything else? He sees other people are in custody who are accessories. Why is he visiting the defendant on April 9th? Why is he visiting the defendant on April, I believe it was 19th? Why is he going out there? Initially when I asked him, you know, that you're not supposed to have contact with the witnesses, he said yes. And then there's an objection, there's a little bit of discussion between the court, Mr. Giller and myself, and then I say let me ask you again, you know you're not supposed to go see the witnesses or talk to witnesses. Oh, well I know that now. Why is he putting money on the defendant's books? Maybe he's worried about his own liberty, I've got to look out for myself.'" Exh. G at 6, n. 7.

1    lack of trustworthiness from the content of Mr. O'Dell's statements, his trial testimony, and the inconsistent statements of both Mr. O'Dell and Ms. Duran. It was not established

2    that Mr. Silva knowingly did anything wrong. There was no suggestion he threatened any other witness or in some other way influenced anyone's testimony. Whether Mr. Silva

3    spoke to defendant or any other witness during the course of the trial, or whether he had been informed he should not speak to witnesses, were not matters that had any likelihood

4    of influencing the jury's verdict. In addition, the prosecutor's conduct, even if improper, cannot reasonably be characterized as reprehensible or deceptive. In context, the

5    prosecutor's questions and comments were nothing more than an attempt to show that Mr. Silva is defendant's friend and is motivated to help him or do him favors.

6

Exh. G at 6-7.

7

8       The California court's resolution of this portion of petitioner's claim of prosecutorial

9    misconduct was not contrary to, or an unreasonable application of, Supreme Court law. The

10   appellate court cited the California Supreme Court's decision in *Monterroso* for its resolution of the

11   Fourteenth Amendment issue. That decision, in turn, relied on controlling United States Supreme

12   Court precedent. *People v. Monterroso*, 34 Cal.4th 743, 785 (2004) ("A prosecutor's conduct

13   violates the Fourteenth Amendment to the federal Constitution when it 'infects the trial with such

14   unfairness as to make the conviction a denial of due process.' [*People v. Morales* (2001) 25 Cal.4th

15   34, 44; accord, *Darden v. Wainwright* (1986) 477 U.S. 168, 181.] In other words, the misconduct

16   must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'

17   [United States v. Agurs (1976) 427 U.S. 97, 108.]").

18       The appellate court ultimately did not need to resolve the question of whether the

19   prosecutor actually committed misconduct because it found that "the prosecutor's question and

20   comments, even if improper, could not reasonably have had any effect on the verdict." Exh. G at

21   6. This finding is consistent with a finding under *Chapman v. California*, 386 U.S. 18, 23 (1967),

22   that there was no reasonable possibility that the error complained of might have contributed to

23   petitioner's conviction. This conclusion, as the appellate court's recitation of facts demonstrates,

24   is correct. Hence, even had petitioner presented this portion of his original claim to the California

25   Supreme Court, and thereby exhausted it for purposes of bringing a federal petition for habeas relief,

26   he could not show that the California court's resolution of his claim was contrary to, or an

27   unreasonable application of, clearly established Supreme Court law.

28

1      The portion of petitioner's claim that has been exhausted in the California state courts is

2 his complaint regarding the prosecutor's closing argument. The California appellate court describes

3 the relevant facts related to this portion of the claim and explains its resolution of the claim.

4       Defendant also complains that the prosecutor told the jury about a conversation with his
        daughter that morning, where she asked if a "bad guy goes free" if he lost a trial, and he
5       told her, "[I]f I lose . . . that's usually what happens." The story, which had nothing to do
        with the evidence in this case and tended to appeal to the jury's fears, should not have
6       been told. [Citations.] The prosecutor also should not have told the jurors that in deciding
        whether there was reasonable doubt, "in my limited experience, what I figured out is that
7       most people have a gut reaction as soon as they walk into that jury room, something in
        their gut is telling them the defendant is guilty, the defendant is guilty. [P] [T]he way I
8       like to explain it is, if your gut is telling you that the defendant is guilty, your subconscious
        mind is jumping through the hoops of reasonable doubt. Your gut is your subconscious.
9       Your subconscious mind is jumping through the hoops. Let your conscious mind catch
        up and return a verdict. Return a just verdict." The jurors' responsibility was to apply the
10      law as explained by the court; not to follow their "gut" feelings.

11 Exh. G at 7.

12      Although the appellate court found error in the prosecutor's statements, it also found that

13 error cured by subsequent corrective actions taken by the trial court.

14      The prejudicial effect of errors may be overcome by subsequent corrective action
        such as the admonishment of the jury, and in such event the error may be deemed cured.
15      (*People v. Ryan* (1981) 116 Cal. App. 3d 168.) Here, the court admonished the jury that
        both attorneys "talked extensively about reasonable doubt, about sympathy, emotion this
16      type of situation. Reasonable doubt is an instruction that I'll read to you. You're going
        to have this binder with all the instructions in the jury room, so that you can refer to the
17      instructions. These are the laws that apply to this case, so that if there's any question
        about the instructions, each juror in fact can read the instruction for himself or herself. .
18      . . [P]  So, once again, they are advocates[.]  I don't think they intentionally
        misrepresented anything to you[;] however, they have sort of advocated certain positions.
19      So, once again, this is the law that applied to this case.  [P]  Second point I did want to
        make to you, at the end of the [prosecutor's] case, he closed with a little discussion he had
20      with his daughter that morning. I'm ordering that you strike anything about that argument
        pertaining to his daughter. You're not to consider that in any way. The reason I'm doing
21      that is because it's really not relevant argument to this particular case.  So that, if you
        made note of that or that should happen to come up in the jury room, you're to strike that
22      from your mind and not let that enter into your decision in any fashion." The court also
        provided the jury with full and complete instructions on reasonable doubt.  We presume
23      that the jury followed the court's instructions. (See *People v. Gray* (2005) 37 Cal.4th 168,
        217; *People v. Pinholster* (1992) 1 Cal.4th 865, 919; *People v. Velez* (1983) 144 Cal. App.
24      3d 558, 569.)

25 Exh. G at 7-8.[8/]

26

27 _____

        8.  The trial court's curative instructions can be found in the Reporter's Transcript.  Exh. B
28 at 1409-12, 1422-23.

Memo. of Pts. & Authorities in Support of Anser          *Anton Lee v. Derral Adams* - C 08-1200 PJH (PR)

11

1        The California court's resolution of this issue was correct. Although it would have been

2 preferable had the prosecutor's comments not occurred, they did not cause prejudice to petitioner.

3 The trial court's efficient and accurate corrective action cured any possible prejudicial effect. The

4 California appellate court's conclusion was consistent with United States Supreme Court law

5 recognizing that a trial court's corrective action can cure any possible prejudice from prosecutorial

6 misconduct. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 648 (1974) ("We do not, by this

7 decision, in any way condone prosecutorial misconduct, and we believe that trial courts, by

8 admonition and instruction, and appellate courts, by proper exercise of their supervisory power, will

9 continue to discourage it. We only say that, in the circumstances of the case, no prejudice amounting

10 to a denial of constitutional due process was shown."). The state courts' finding of no prejudice also

11 means that the prosecutorial misconduct could not have had a substantial and injurious effect on the

12 jury's verdict—a finding that would be necessary to grant federal habeas relief. *See Brecht v.*

13 *Abrahamson*, 507 U.S. 619, 631 (1993). Hence, to the extent petitioner's claim of prosecutorial

14 misconduct was exhausted in the state courts, it provides no basis for federal habeas relief.

15                    **III.**

16    **PETITIONER'S CONSTITUTIONAL RIGHTS WERE NOT VIOLATED BY THE GIVING OF A JURY INSTRUCTION ON CONSCIOUSNESS**

17    **OF GUILT**

18        Petitioner also claims that the trial court erred in instructing the jury with a standard

19 California jury instruction that certain actions by a defendant might be considered by the jury as

20 showing a consciousness of guilt.[9/] The claim cannot support petitioner's bid for federal habeas

21 relief. The California appellate court correctly found that evidence at trial justified the giving of the

22 instruction and that the instruction was not erroneous. Because there was no error in giving the

23 instruction, there certainly was no prejudicial error.

24        At trial, the court instructed the jury in accordance with CALJIC No. 2.04 on actions by

25 the defendant that can manifest a consciousness of guilt. The instruction provided:

26

---

27     9. This is claim number four in petitioner's federal Petition for Writ of Habeas Corpus, but it is the third claim addressed in respondent's Answer because this Court dismissed petitioner's

28 original third claim for relief.

1        If you find that a defendant attempted to or did persuade a witness to testify falsely
or attempted to or did fabricate evidence to be produced at the trial, that conduct may be
2    considered by you as a circumstance tending to show a consciousness of guilt. However,
that conduct is not sufficient by itself to prove guilt and its weight and significance, if any,
3    are for you to decide.

4    Exh. B at 1415-16; *see also* Exh. G at 8. In the California Court of Appeal, petitioner challenged

5    the instruction claiming it was erroneous under state law. He did not contend the instruction violated

6    his federal constitutional rights and did not cite any federal cases in support of his argument. Rather,

7    as the California appellate court noted, petitioner, "citing *People v. Coffman and Marlow* (2004) 34

8    Cal.4th 1, 102 (*Coffman*), contends that the instruction was improper because there was no evidence

9    providing a factual basis for it." Exh. G at 8. As discussed in more detail below, in *Coffman*, the

10   California Supreme Court rejected a claim that the giving of CALJIC No. 2.04 was error. *See People*

11   *v. Coffman and Marlow* (2004) 34 Cal.4th 1, 102 (*Coffman*).

12       Petitioner's appellate counsel did not renew the claim of instructional error in petitioner's

13   California Supreme Court Petition for Review. *See* Exh. H. Petitioner, however, filed a pro se

14   Petition for Writ of Habeas Corpus in the California Supreme Court contending that the trial court

15   committed error when it instructed the jury with CALJIC No. 2.04. Exh. J. In his pro se petition,

16   petitioner repeated his claim of state law error. He also cited one United States Supreme Court

17   case—*Donnelly v. DeChristoforo*, 416 U.S. at 642.[10/] The California Supreme Court denied the

18   Petition for Writ of Habeas Corpus, citing *In re Waltreus*, 62 Cal.2d 218 (1965).[11/] Exh. K.

19   

---

20       10. In *Donnelly*, the Supreme Court considered a defendant's claim that a remark by the
prosecutor in his closing argument deprived the defendant of his constitutional right to a fair trial.
21   *Id.* at 638. In rejecting the claim, the Supreme Court stated that "not every trial error or infirmity
which might call for application of [a federal appellate court's] supervisory powers [over federal
22   district courts] correspondingly constitutes a 'failure to observe that fundamental fairness essential
23   to the very concept of justice.' [Citation.]" *Id.* at 642. The court held that the prosecutor's remark
did not so infect the trial with fundamental unfairness as to make the resulting conviction a denial
24   of due process. *Id.* at 643. In so finding, the Court cited its own authority that, when reviewing an
instruction given in a state court: "'Before a federal court may overturn a conviction resulting from
25   a state trial in which this instruction was used, it must be established not merely that the instruction
26   is undesirable, erroneous, or even "universally condemned," but that it violated some right which
was guaranteed to the defendant by the Fourteenth Amendment." *Id.* at 642-43.
27   
    11. In *Waltreus*, the California Supreme Court held that "habeas corpus ordinarily cannot
28   serve as a second appeal." *Waltreus*, 62 Cal. 2d at 225. Thus, under the *Waltreus* rule, the

1    As in the California Court of Appeal, petitioner's claim of error here focuses solely on the

2  testimony of his girlfriend, Alysia Duran. He claims there was insufficient evidence that he

3  persuaded Ms. Duran to testify falsely at trial and, therefore, there was no basis to give CALJIC No.

4  2.04. Petitioner is incorrect. As the California appellate court found, there was sufficient evidence

5  that petitioner might have persuaded Ms. Duran—as well as other witnesses—to testify falsely.

6  There was also evidence at trial that Ms. Duran had destroyed evidence on petitioner's behalf.

7  Therefore, the trial court was justified in instructing the jury with CALJIC No. 2.04.

8    The California Court of Appeal began its analysis of petitioner's claim by describing

9  *Coffman*. In *Coffman*, the California Supreme Court considered the harm in giving an instruction

10  such as CALJIC No. 2.04, contrasting it with CALJIC No. 2.15, which tells the jury that it can infer

11  the defendant is guilty of a theft-related crime from a defendant's conscious possession of stolen

12  property. Exh. G at 8-9. CALJIC No. 2.15, if improperly given, has the potential for lessening a

13  prosecutor's burden of proof. Exh. G at 9. "But '[b]ecause CALJIC [No. 2.04] instructed the jury

14  to infer a consciousness of guilt only if it first found from the evidence that defendants had engaged

15  in the described conduct, and further informed the jury such evidence was not, in itself, sufficient

16  to prove guilt, the instructions properly guided the jury's consideration of the evidence and did not

17  lessen the prosecution's burden of proof.' (*Coffman, supra,* 34 Cal.4th at p. 102.)" Exh. G at 9.

18  According to the appellate court, "[i]t follows that there is little harm in giving CALJIC No. 2.04

19  even though there is scant, if any, evidence to support it. In any event, all that is required before the

20  instruction may be given is that there be 'some evidence in the record that, if believed by the jury,

21  would sufficiently supported the suggested inference.' (*Coffman,* at p. 102.)" Exh. G at 9.

22    The California appellate court then compared the circumstances in *Coffman* that justified

23  the instruction to the facts of petitioner's case. It concluded that there was ample evidence in the

24  record to support the trial court's decision to give CALJIC No. 2.04.

25

26  California Supreme Court will not review in a habeas petition any claim raised on direct appeal. The

27  Ninth Circuit Court of Appeals has held the *Waltreus* rule does not constitute a state procedural
     default sufficient to bar federal habeas review. *Hill v. Roe,* 321 F.3d 787, 789 (2002); *see also Ylst*

28  *v. Nunnemaker,* 501 U.S. 797 (1991).

1    In *Coffman*, it was enough that the defendants' jailhouse correspondence included
     references to a fictitious actual perpetrator of the crimes, evidence that suggested an effort
2    to persuade one another to testify falsely or to fabricate evidence. ([*Coffman*, 34 Cal.4th]
     at pp. 102-103.)    Here, many witnesses who also were defendant's friends or
3    acquaintances claimed that earlier statements were incorrect or that they had no recall of
     anything that tended to implicate defendant in the murder. There was evidence that Ms.
4    Duran destroyed clothing, threw away bullet casings and cancelled a cell phone. Ms.
     Duran testified that she had discussed with defendant that they would tell police they had
5    gone to "Rich's house" from Mr. Calagno's house. At the time of the trial, Ms. Duran was
     in custody because she failed to comply with a court order to appear. She had spoken with
6    defendant over 100 times since he was in custody. Ms. Duran also spoke about her
     concerns that defendant might think she was a "snitch." She testified that she and
7    defendant had bussed to court together from Santa Rita prison. She was wearing red,
     which she knew indicated that she was a "snitch." Defendant asked her why she was
8    wearing red. In short, there is evidence that Ms. Duran and other witnesses testified
     falsely and destroyed evidence, some direct evidence that defendant may have been
9    involved in their decisions to do so, and other evidence permitting an inference that
     defendant was involved. Under the circumstances, there was no error, and certainly no
10   prejudicial error, in giving the instruction.

11   Exh. G at 9.[12]/

12       Petitioner completely fails to establish that the California appellate court's resolution of

13   his claim of error is contrary to, or an unreasonable application of, Supreme Court law. The only

14   federal case he cited to the California Supreme Court, *Donnelly*, provides no support for his claim;

15   indeed, it hurts his claim of error. In that case, the Supreme Court stated that before a federal court

16

17   ─────────────────────────────────────────────

18   12.  The appellate court's conclusions were supported by testimony in the record. For
     example, Alysia Duran testified that she had spoken to petitioner "well over 100 times" while he had
19   been in custody. Exh. B at 783. The prosecutor introduced audiotapes of two of those telephone
     conversations. Exh. B at 784. Part of the discussion between the two apparently centered on
20   petitioner's lawyer's attempt to talk to Duran. Duran said she did not say anything to the lawyer
     because she did not know if petitioner wanted her to talk to him. Exh. B at 785.
21       Duran also testified that she and petitioner had agreed to meet at Adam O'Dell's house after
     she left him at a gas station near Palma Ceia Park on the day of the murder, and that they eventually
22   did meet there. The prosecutor asked Duran why, if this was so, she had told the police that she and
     petitioner went to "Rich's house." She responded that she and petitioner had agreed that this was
23   the story they would tell the police. *See* Exh. B at 824 (prosecutor asked, "Is it something that you
     and Tone talked about as far as what the two of you would say if either of you were talked to by the
24   police?" Duran replied: "Yes.").
25       Duran also testified that she thought she was helping petitioner by burning the clothes on the
     day of the murder (even though she claimed they were not his clothes). Exh. B at 825. Duran also
26   reported petitioner's cell phone missing on the day of the murder because petitioner said he could
27   not find it. Exh. B at 1215.
         Adam O'Dell testified that he had spoken to petitioner several times while petitioner was in
28   jail, including shortly after Duran's testimony. Exh. B at 1188-90.

─────────────────────────────────────────────

1  may overturn a conviction resulting from a state trial based on an allegation that an instruction was

2  improper, it must be established not merely that the instruction is undesirable, erroneous, or even

3  "universally condemned," but that it violated some right which was guaranteed to the defendant by

4  the Fourteenth Amendment. *See Donnelly*, 416 U.S. at 642-43. No such showing is possible here.

5        Federal courts cannot grant habeas relief for mere state law errors. *Estelle v. McGuire*, 502

6  U.S. 62, 67 (1991). The giving of an erroneous jury instruction raises a constitutional issue

7  cognizable on federal habeas review only if it so infected the entire trial that it denied the petitioner

8  due process. *Id.* at 72. There must also "be a reasonable likelihood that the jury has applied the

9  challenged jury instruction in a way that violates the Constitution." *Id.*, quoting *Boyde v. California*,

10  494 U.S. 370, 380 (1990). Due process is not violated, even if constitutional error occurred, unless

11  the error created a substantial and injurious effect or influence on the jury's verdict. *Brecht v.*

12  *Abrahamson*, 507 U.S. at 637.

13        Here, petitioner cannot even show that the instruction was erroneous. Moreover, the

14  discretionary and hypothetical application of CALJIC No. 2.04 to the evidence in petitioner's case,

15  predicated on preliminary findings the jury had to make before the instruction would have any

16  bearing on their deliberations, precludes any finding that the instruction infected the trial so as to

17  raise a federal constitutional violation. It is impossible to tell from the record whether the jury even

18  applied the instruction. Furthermore, the inference authorized by the instruction would not arise

19  unless the jury first made the predicate finding of witness tampering or destruction of evidence.

20  Even then, the instruction itself would still prohibit the jury from relying on a finding of falsification

21  of evidence as sufficient to prove guilt.

22        In sum, there was no error in the giving of CALJIC No. 2.04. Any hypothetical error did

23  not rise to the level of infecting petitioner's entire trial to the point of denying him due process. The

24  state courts' denial of relief on this claim cannot be shown to be contrary to, or an unreasonable

25  application of, Supreme Court law.

26

27

28

# IV.

## PETITIONER DID NOT RECEIVE AN UPPER-TERM SENTENCE

Petitioner's final claim for relief is that "his right to trial by jury was violated when the sentencing court imposed an upper-term sentence based on facts not tried and found by a jury." OSC at 2. This claim was never presented to any California state court for resolution. More importantly, petitioner did not receive an upper-term sentence. Therefore, this claim fails to present a basis for granting federal habeas relief.

In this federal petition, petitioner

> contends that he was deprived of his Sixth Amendment right to a jury trial and Fourteenth Amendment right to due process. The trial court imposed the upper term of 25 years to life by relying on aggravating factors found true neither by a jury nor beyond a reasonable doubt. . . . Although harmless error analysis applies to such violations the error in the present case was not harmless beyond a reasonable doubt and the case in the furtherance of justice should and must be remanded for re-sentencing.

Pet. for Writ of Habeas Corpus, Ground 5. Petitioner's claim is presumably based on *Cunningham v. California*, 549 U.S. 270 [127 S.Ct. 856, 166 L.Ed.2d 856] (2007), in which the Supreme Court found that California's Determinate Sentencing Law violated the Sixth Amendment right to a jury trial because it exposed defendant to a sentence in excess of the statutory maximum based on facts found by the trial court by a preponderance of the evidence rather than by the jury beyond a reasonable doubt. *See also People v. Black*, 41 Cal.4th 799 (2007) (applying the *Cunningham* decision to California's sentencing laws).

This claim is unexhausted. A defendant convicted in state court must first exhaust all available state remedies before turning to the federal courts for habeas relief. 28 U.S.C. § 2254(b)(1). Petitioner has failed to bring this claim in any California court. Neither in his direct appeal or in any state habeas proceeding has petitioner contended that his sentence violated his Sixth Amendment rights. Therefore, the claim cannot form the basis of federal habeas relief.

Giving petitioner an opportunity to exhaust his claim would be an exercise in futility. Petitioner misunderstands the sentence he received; no part of his sentence constituted an "upper-term sentence." Petitioner was not sentenced under California's Determinate Sentencing Law. The base component of his 60-year-to life sentence is a 15-year-to-life indeterminate sentence for

1   petitioner's conviction of second degree murder. *See* Cal. Penal Code § 190(a).[13/] That sentence was

2   doubled, pursuant to California's Three Strikes law, because of petitioner had suffered a prior

3   conviction. *See* Cal. Penal Code § 1170.12(c)(1).[14/]  The remainder of the sentence is based on

4   enhancements for petitioner's use of a gun and his prior conviction.  The trial court explained the

5   sentence at a hearing on July 12, 2005.

6   > Matter being submitted, I am imposing for count 1 [the murder conviction], 15 years
    > to life in the state prison as an indeterminate sentence.  As required by [California] Penal
7   > Code section[s] 1170.12(c)(1) [the Three Strikes law] and 667(a)(1) . . ., I need to double
    > that 15 to life to make that 30 years to life in the state prison.
8   > Pursuant to 667(a)(1), the prior conviction having been found true, I enhanced that
    > sentence by five years.  He's ordered to serve a consecutive five years in the state prison
9   > for 35 years to life.
    > Since the jury did find Mr. Lee guilty of all the [firearm] use clauses, Mr. Lee can be
10  > convicted of them; however, he can only be sentenced on one.  I am going to follow Mr.
    > Ford [the prosecutor] and the probation officer's recommendation.   I sentence the
11  > defendant to an additional 25 years to life in the state prison pursuant to [California] Penal
    > Code section 12022.53(d) . . . .

12  Exh. A at 568-69 (transcript of the sentencing hearing, found in Volume 3 of the Clerk's Transcript);
13
    see also Exh. A at 562-565 (court minutes from the sentencing hearing).[15/]
14
15      In sum, petitioner's unexhausted claim is based on an erroneous premise.  Because no part

16  of petitioner's sentence constituted an "upper-term sentence," his claim that his upper-term sentence

17  violates his Sixth Amendment rights cannot support his bid for federal habeas relief.

18  ----

    13.  California Penal Code section 190(a) provides in relevant part: "every person guilty of
19  murder in the second degree shall be punished by imprisonment in the state prison for a term of 15
    years to life."
20

21      14.  California Penal Code section 1170.12(c)(1) provides in relevant part: "(c) For purposes
    of this section, and in addition to any other enhancements or punishment provisions which may
22  apply, the following shall apply where a defendant has a prior felony conviction: (1) If a defendant
    has one prior felony conviction that has been pled and proved, the determinate term or minimum
23  term for an indeterminate term shall be twice the term otherwise provided as punishment for the
    current felony conviction."
24

25      15.  California Penal Code section 667(a)(1) provides in relevant part: "any person convicted
    of a serious felony who previously has been convicted of a serious felony . . . shall receive, in
26  addition to the sentence imposed by the court for the present offense, a five-year enhancement for
    each such prior conviction . . . ."  California Penal Code section 12022.53(d) provides in relevant
27  part:  "any person, who in the commission of a [specified felony], personally and intentionally
    discharges a firearm and proximately causes great bodily injury . . . or death . . . shall be punished
28  by an additional and consecutive term of imprisonment in the state prison for 25 years to life."

**CONCLUSION**

1

2        Accordingly, respondent respectfully requests that the Order to Show Cause be discharged,

3   the petition be denied, and the proceedings terminated.

4            Dated:  July 10, 2008

5                              Respectfully submitted,

6                              EDMUND G. BROWN JR.
                             Attorney General of the State of California

7                              DANE R. GILLETTE
                             Chief Assistant Attorney General

8                              GERALD A. ENGLER
9                              Senior Assistant Attorney General

10                             JULIET B. HALEY
                             Deputy Attorney General

11

12

13                             ERIC D. SHARE
                             Deputy Attorney General

14                             Attorneys for Respondent

15   20118633.wpd
     SF2008401294
16

17

18

19

20

21

22

23

24

25

26

27

28

---

Memo. of Pts. & Authorities in Support of Anser          *Anton Lee v. Derral Adams* - C 08-1200 PJH (PR)

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | GERALD A. ENGLER
Senior Assistant Attorney General
4 | JULIET B. HALEY
Deputy Attorney General
5 | ERIC D. SHARE, State Bar No. 151230
Deputy Attorney General
6 |  455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
7 | Telephone: (415) 703-1375
Fax: (415) 703-1234
8 | Email: Eric.Share@doj.ca.gov

9 | Attorneys for Respondent

10

11 | IN THE UNITED STATES DISTRICT COURT

12 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

13 | SAN FRANCISCO DIVISION

14

15 | **ANTONE LEE,**

         Petitioner,

16

17 |   **v.**

18 | **DERRAL G. ADAMS, Warden,**

19 |         Respondent.

C 08-1200 PJH (PR)

**NOTICE OF LODGING OF
EXHIBITS IN SUPPORT OF
ANSWER**

20

21 |    Respondent hereby notifies petitioner that the following exhibits, all part of the state

22 | court record, are being lodged with the Court in support of the answer in the instant case. These

23 | exhibits are being submitted in paper form only and will be maintained in the case file in the Clerk's

24 | office. The exhibits are being lodged because they are somewhat lengthy and because respondent

25 | is informed and believes that petitioner already possesses copies of these exhibits.

26 | Exhibit A      Clerk's Transcript, *People v. Antone Jerome Lee*, Alameda County
         Superior Court No. CH-36257 (3 Volumes)

27

28 | Exhibit B      Reporter's Transcript, *People v. Antone Jerome Lee*, Alameda County
         Superior Court No. CH-36257 (9 Volumes)

Notice Of Lodging Of Exhibits In Support Of Answer       Antone Lee v. Derral Adams, Warden
                                 C 08-1200 PJH (PR)

1

| | | |
|---|---|---|
| 1 | Exhibit C | Appellant's Opening Brief, *People v. Antone Lee*, California Court of Appeal, First Appellate District, Division One, Case No. A111147 |
| 2 | | |
| 3 | Exhibit D | Respondent's Brief, *People v. Antone Lee*, California Court of Appeal, First Appellate District, Division One, Case No. A111147 |
| 4 | Exhibit E | Appellant's Reply Brief, *People v. Antone Lee*, California Court of Appeal, First Appellate District, Division One, Case No. A111147 |
| 5 | | |
| 6 | Exhibit F | Appellant's Supplemental Brief (filed in pro se), *People v. Antone Lee*, California Court of Appeal, First Appellate District, Division One, Case No. A111147 |
| 7 | | |
| 8 | Exhibit G | August 11, 2006, unpublished opinion, *People v. Antone Lee*, California Court of Appeal, First Appellate District, Division One, Case No. A111147 |
| 9 | Exhibit H | Petition for Review, *People v. Antone Lee*, California Supreme Court, Case No. S145911 |
| 10 | | |
| 11 | Exhibit I | October 18, 2006, order denying review, *People v. Antone Lee*, California Supreme Court, Case No. S145911 |
| 12 | Exhibit J | Petition for Writ of Habeas Corpus, *In re Antone Lee*, California Supreme Court, Case No. S151865 |
| 13 | | |
| 14 | Exhibit K | Docket sheet, *In re Antone Lee*, California Supreme Court, Case No. S151865, indicating Petition for Writ of Habeas Corpus was denied on September 12, 2007 |

16    Dated: July 10, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

GERALD A. ENGLER
Senior Assistant Attorney General

JULIET B. HALEY
Deputy Attorney General

*Eric D. Share*

ERIC D. SHARE
Deputy Attorney General
Attorneys for Respondent

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **Antone Lee v. Derral G. Adams, Warden**

No.:    **C 08-1200 PJH (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On <u>July 10, 2008,</u> I served the attached

**ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER**

**NOTICE OF LODGING OF EXHIBITS IN SUPPORT OF ANSWER**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

Antone Lee
V-88797
S.A.T.F. Corcoran State Prison
C-3-109
P. O. Box 5244
Corcoran, CA 93212

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on July 10, 2008, at San Francisco, California.

| Pearl Lim | | |
| --- | --- | --- |
| Declarant | | Signature |

20121743.wpd