UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANTONE LEE,

           Petitioner,

  vs.

DERRAL G. ADAMS, Warden,

           Respondent.
_____/

No. C 08-1200 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      This case arises from a habeas corpus petition filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court issued an order for respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the court. Petitioner has responded with a traverse and supporting memorandum of points and authorities. For the reasons set out below, the petition is denied.

### BACKGROUND

      Petitioner was convicted by a jury of second degree murder, with use of a firearm in commission of the offense, causing the death of the victim. Ex. G (opinion of the California court of appeal) at 1.[1] With enhancements for prior convictions, he was sentenced to prison for sixty years to life. *Id.* He does not dispute the following facts, excerpted from the opinion:

> On the evening of January 6, 2003, Roderick Kelly was shot in the abdomen while at Palma Ceia Park in Hayward. Mr. Kelly died later that night, without telling police who shot him. The only person who saw the shooting appears

---

[1] "Ex." refers to exhibits lodged in support of respondent's answer.

to have been a man who had been in the park that night, looking for his girlfriend's purse, which had been stolen from a nearby location. The man described the person who shot Mr. Kelly to police as a black man, 26 to 27 years old. He was slouching down, but looked to be approximately 5 feet 5 inches to 5 feet 6 inches tall and 130 pounds,[2] wearing all dark clothing. Police found a cellular telephone and a cigarette lighter in the area where Mr. Kelly was shot. They did not find any shell casings, suggesting that the weapon used against Mr. Kelly had been a revolver.

The police investigation led police to believe that someone named "Tone" should be located. They learned that defendant went by the name "Tone." They also learned that defendant and Mr. Kelly lived with Rudolph Calagno in a house that he was renting. Mr. Kelly apparently had taken and sold a generator belonging to defendant, which led to an argument between defendant and Mr. Kelly a couple of days before the shooting. There also was evidence that a couple of weeks before the shooting defendant was complaining that Mr. Kelly was demanding half of everything he owned. On January 6, Mr. Calagno overheard part of a conversation between defendant and Mr. Kelly about taking half the money from the sale of the generator. A short time later Mr. Calagno left with an acquaintance, Mike Webb. They went to Mr. Webb's car, which was parked next to the park. Defendant met them at the car, wearing dark pants and a dark sweatshirt. Defendant asked for a light, and Mr. Calagno gave him a disposable lighter. Defendant walked away. A few minutes later, Mr. Calagno and Mr. Webb heard gunshots. Mr. Calagno saw defendant running across the park.[3]

Defendant's girlfriend, Alysia Duran, testified that she picked defendant up on January 6, and had taken him to Mr. Calagno's house. Several people, including Mr. Kelly, were there. It appeared that the room Ms. Duran and defendant shared had been broken into. Defendant had an angry conversation with Mr. Kelly about it. Mr. Kelly told defendant he wanted half of everything[.] Ms. Duran later dropped defendant off at a gas station, drove around the park twice, to see what was going on, and then went to the home of Adam O'Dell, finding Mr. O'Dell there with Joseph Blackmon. Mr. O'Dell testified that at some point he ran into defendant, who pulled out a .38 revolver, telling Mr. O'Dell that this was the night he was going to shoot Mr. Kelly. Ms. Duran, Mr. O'Dell and Mr. Blackmon went from Mr. O'Dell's house to the park, believing that something was going to happen there.

---

[2] According to defendant's girlfriend, defendant weighed between 185 and 195 pounds at the time of the crime. According to the probation report, defendant is approximately 6 feet tall.

[3] At trial, Mr. Calagno denied that he remembered telling the police many of [the] things recorded in his statement. He also testified that he only saw "someone" jumping up and down. Mr. Webb made a statement to the police that tended to show that defendant shot Mr. Kelly. At trial, Mr. Webb at first denied remembering most of that statement, and denied remembering much of anything about the events surrounding Mr. Kelly's death. The following day, Mr. Webb, who was in a drug treatment program, testified that he had been untruthful the previous day. He didn't feel good about his testimony, feeling as if he had thrown everything he had learned at treatment out the window. He decided to tell the truth, recognizing that he was there for himself, not for anyone else. Mr. Webb then stated that he did in fact recall many of the events surrounding the shooting and that everything he had said in his statement to the police was true.

> Mr. O'Dell returned to his house. Ms. Duran showed up, and then defendant showed up, jumping in through the window, sweating as if he had been running, and carrying two bullet casings.[4] Ms. Duran testified that she came out of the bathroom to see some clothing on the ground. She heard Mr. O'Dell say, "[W]hat about the clothes?" She stated that if something needed to be done, she would do it. She took the clothes to an industrial area, where she poured gasoline on them and burned them. She spilled gasoline on herself, with the result that she also burned her sweatshirt and about six inches off her hair. She then returned to Mr. O'Dell's house, after which she and defendant went to a motel. At some point, Mr. O'Dell gave Ms. Duran some shell casings, which she threw out on the freeway. Mr. O'Dell told her that Phil Silva had taken the gun and that the gun had been destroyed with a cutting torch. Mr. O'Dell also told the police that Mr. Silva took the gun. Each of them also stated, however, that Mr. O'Dell later sought to buy the gun, or that Ms. Duran later sought to sell it.
>
> The cell phone found in the park was one of two matching phones that belonged to Ms. Duran. Defendant had been using that phone, and had used it twice on January 5 to call another girlfriend. Ms. Duran cancelled the phone on January 7, the day after the shooting, reporting that it had been stolen.

Ex. G at 1-4 (footnotes in original).

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case

---

[4] At trial, Mr. O'Dell essentially recanted his statement to the police, testifying that he did not remember the events he had described in his statement, and explaining that he had made things up to help himself in his own criminal case.

3

differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion.  *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n.2 (9th Cir.2000).

## DISCUSSION

As grounds for habeas relief petitioner asserts that:  (1) his conviction was not supported by sufficient evidence that he was the perpetrator; (2) the prosecutor engaged in misconduct; (3) his due process rights were violated by the trial court's giving a jury instruction when there was not sufficient evidence to support giving it; and (4) his right to a trial by jury was violated when the sentencing court imposed an upper-term sentence based on facts not tried to and found by a jury.

**I.    Sufficiency of the Evidence**

Petitioner contends that his conviction was not supported by sufficient evidence that he was the perpetrator of the crime.  In addition to disputing petitioner's claim, respondent contends this claim is not exhausted.

**A.    Exhaustion of Claim**

4

### 1. Legal Standard

Prisoners in state custody who wish to challenge either the fact or length of their confinement in federal habeas proceedings are first required to exhaust state judicial remedies by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. 28 U.S.C. § 2254(b),(c); *Rose v. Lundy*, 455 U.S. 509, 515-16 (1982); *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981); *McNeeley v. Arave*, 842 F.2d 230, 231 (9th Cir. 1988). Ordinarily a state prisoner does not fairly present a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material that does so. *Baldwin v. Reese*, 541 U.S. 27, 30-34 (2004) (claim not fairly presented where state petitioner did not raise claim specifically in brief to state supreme court even though that court had the opportunity to read lower court opinions); *see, e.g., Galvan v. Alaska Dep't of Corr.*, 397 F.3d 1198, 1201-02 (9th Cir. 2005) (inclusion of federal claim in brief to intermediate appellate court followed by omission of that claim in brief to state's highest court supports inference that petitioner chose not to exhaust the federal claim in state's highest court).

The court may deny a petition on the merits even if it is unexhausted. 28 U.S.C. § 2254(b)(2). But the court may do so "only when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005).

### 2. Analysis

In his state court appeal, petitioner claimed that because his height and build did not comport with the sole eyewitness' description of the shooter and because the trial testimony of some witnesses tended to exonerate him, the evidence was insufficient to convict him of the murder. Ex. G at 4. In this case, however, he also contends that the testimony of many witnesses was contradictory and unreliable, and that there was "no solid evidence identifying petitioner as the shooter." Trav., P. & A. at 7.

Respondent argues that to the extent petitioner now raises factual claims concerning

sufficiency of the evidence that were not previously presented to the state court, those claims are barred for failure to exhaust his state remedies. To the extent that the claim is the same as the one petitioner raised in state court, respondent argues that the court of appeal correctly rejected his claim.

New factual allegations in a federal petition do not render a claim unexhausted unless they fundamentally alter the legal claim already considered by the state courts. *Belmontes v. Brown*, 414 F.3d 1094, 1117-18 (9th Cir. 2005), *rev'd on other grounds*, *Ayers v. Belmontes*, 549 U.S. 7 (2006). Although petitioner did not cite precisely the same facts in support of his federal claim as he cited in support of his state court appeal, he presented the same fundamental legal claim, that the evidence at trial was insufficient to support the jury's verdict. Ex. G at 4-5. As in *Belmontes,* petitioner's new factual allegations in his federal petition do not render his claim unexhausted.

**B.     Merits of Claim**

**1.     Legal Standard**

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, *Jackson v. Virginia*, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief. *Id.* at 324. The federal court determines only whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. *Id.* at 324.

**2.     Analysis**

Using the *Jackson* standard of review, the appellate court held that the evidence on record in this case could support a finding of guilt beyond a reasonable doubt. Ex. G at 5.

It held that the jury could reasonably have concluded that the eyewitness was mistaken about the shooter's physical characteristics. *Id.* The appellate court also considered the changing testimony of several witnesses. *Id.* It concluded petitioner's claim raised no colorable issue as to sufficiency of the evidence. *Id.* at 4, n.6. Despite evidence that was at times contradictory and inconsistent, the appellate court held that there was "substantial evidence supporting the jury's findings of guilt beyond a reasonable doubt." *Id.* at 5.

Evidence was presented that on the evening in question, defendant told O'Dell that this was the night he would shoot Kelly; defendant possessed a revolver that evening; after the shooting, defendant jumped through O'Dell's window carrying shell casings; and Duran burned the clothes defendant was wearing that evening. Ex. G at 3. Evidence was also presented that on the night of the shooting defendant wore dark clothing, matching the eyewitness's description of the shooter's clothing; defendant had a cell phone and a cigarette lighter shortly before the shooting; a cell phone used by defendant (belonging to Duran) and a lighter were found in the park; and no shell casings were found at the scene of the shooting, suggesting that a revolver was used. *Id.* at 2. In addition, evidence was presented that defendant was in the vicinity of the park where the shooting occurred shortly before the time of the shooting and that defendant was seen running across the park immediately after the shooting. *Id.*

Because on this evidence a rational trier of fact could have found proof of guilt beyond a reasonable doubt on these facts, petitioner's due process rights were not violated. Thus, the state appeal court's resolution of petitioner's claim is not contrary to, or an unreasonable application of, *Jackson*.

**II.     Prosecutorial Misconduct**

Petitioner contends that misconduct by the prosecutor in cross-examination of a defense witness and in two portions of closing argument infected the trial with unfairness to such a degree that his right to due process was violated. In addition to disputing this claim, respondent contends that a portion of the claim is not exhausted.

**A.     Exhaustion of Claim**

7

### 1. Legal Standard

As noted above, inclusion of a claim in a brief to an intermediate appellate court followed by omission of that claim in a brief to the state's highest court supports the inference that the petitioner chose not to exhaust the federal claim. *See Galvan*, 397 F.3d at 1201-02. However, as also noted above, the court may deny an unexhausted claim on the merits when "it is perfectly clear that the applicant does not raise even a colorable federal claim." *See Cassett*, 406 F.3d at 623-24.

### 2. Analysis

Two of the instances of prosecutorial misconduct that petitioner raises here he presented at all levels of the state appellate process. A third instance that is raised here was presented to the California Court of Appeal, but not to the California Supreme Court. Respondent contends that this third claim – concerning cross-examination of defense witness Silva -- is unexhausted. Petitioner responds with a bare contention that he has completely exhausted state remedies concerning his claims of prosecutorial misconduct, without elaborating on that contention.

Because petitioner did not raise the claim concerning the cross-examination of Silva in the state supreme court, the claim is unexhausted. However, petitioner's claim of prosecutorial misconduct premised on the cross-examination of Silva is not even "a colorable federal claim," *Cassett*, 406 F.3d at 623-24, so will be denied. *See* 28 U.S.C. § 2254(b)(2).

## B. Merits of Claim

### 1. Legal Standard

On a petition for habeas corpus, the standard of review for a claim of prosecutorial misconduct is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). A defendant's right to due process is violated when a prosecutor's misconduct renders the trial fundamentally unfair. *Id.* Under *Darden*, the first issue is whether the prosecutor's remarks were improper; the next question is whether the improper

remarks, if any, infected the trial with unfairness. *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005).

In addition, under *Brecht v. Abrahamson*, 507 U.S. 619 (1993), habeas petitioners are not entitled to relief based on trial error unless they can establish that it resulted in actual prejudice. A significant factor in determining the prejudicial effects of misconduct is whether the trial court issued a curative instruction. When a curative instruction is issued, a court presumes that the jury followed that instruction and that no due process violation occurred. *Darden*, 477 U.S. at 182 (the Court condemned egregious, inflammatory comments by the prosecutor but held that the trial was fair since curative actions were taken by the trial judge); *Tan*, 413 F.3d at 1115 ("we presume jurors follow the court's instructions absent extraordinary circumstances"). This presumption may be overcome if there is an "overwhelming probability" that the jury would be unable to disregard evidence and a strong likelihood that the effect of the misconduct would be "devastating" to the defendant. *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987); *Tan*, 413 F.3d at 1115-16.

**2.     Analysis**

**a.     Prosecutor's closing argument**

In closing argument, the prosecutor recounted a story about a conversation with his daughter, to the effect that if he lost the case the bad guy would go free. Ex. G at 7. He also urged the jury to follow their gut feeling in reaching a verdict. *Id.* Defense counsel's objection to that portion of the prosecutor's argument was sustained. Ex. B (trial transcript) at 1403-1408, 1410. The judge then instructed the jury to apply the law as he gave it to them. Ex. G at 7-8. The judge admonished the jury to put aside any sympathy or emotions counsels' arguments might have raised. *Id.* He specifically admonished the jury to "strike anything about that argument pertaining to [the prosecutor's] daughter. You're not to consider that in any way." *Id.* at 8.

The state appellate court held both of these statements by the prosecutor to be improper, but noted that the prejudicial effect of errors "may be overcome by subsequent corrective action such as the admonishment of the jury, and in such event the error may be

9

1 deemed cured."  Ex. G at 7.  In light of the trial court's admonishments and its provision of
2 full and complete jury instructions on reasonable doubt, the court of appeal impliedly
3 rejected petitioner's claim, saying "[we] presume that the jury followed the court's
4 instructions."  *Id.* at 8.

5    The improper statements were not particularly inflammatory or emotion-laden, at
6 least compared to some that might occur in criminal cases, and were a relatively small part
7 of the closing.  The trial court gave a thorough limiting instruction, quoted above.  There is
8 no reason to believe that the jury would have had a more difficult time ignoring the
9 prosecutor's story about his child or his "gut" comment than any other minor bit of
10 misconduct by a prosecutor in closing argument.  Therefore, petitioner has not overcome
11 the presumption under *Greer* and *Tan* that the jury successfully disregarded the improper
12 comments.  *See Greer*, 483 U.S. at 766 n.8 ; *Tan*, 413 F.3d at 1115-16.  Because there
13 thus was no violation of petitioner's due process rights as to this claim.

### b.    Cross-examination of defense witness Silva

> On cross-examination, the prosecutor asked if defense counsel told Mr. Silva he was not supposed to talk to any other witnesses.  Mr. Silva replied that he did not remember.  The prosecutor asked if he knew that he was not allowed to talk to other witnesses.  Defense counsel's objection was overruled, after which Mr. Silva stated, "If that's what you're telling, yeah, I know that now then."  Mr. Silva agreed that he had visited defendant in jail on several occasions, and had provided funds for defendant to spend in jail.

19 Ex. G at 6.

20    Petitioner claims that this was an improper accusation of witness tampering.  This
21 claim is unexhausted, as discussed above, but will be denied.  *See* 28 U.S.C. § 2254(b)(2)
22 (court may deny a petition on the merits even if it is unexhausted).

23    In ruling on this claim, the court of appeal said:  "In context, the prosecutor's
24 questions and comments were nothing more than an attempt to show that Mr. Silva is
25 defendant's friend and is motivated to help him or do him favors."  Ex. G at 7.  "It was not
26 established that Mr. Silva knowingly did anything wrong."  *Id.*  The state court concluded
27 that "the prosecutor's question and comments, even if improper, could not reasonably have
28 had any effect on the verdict."  Ex. G at 7.

In some circumstances, a prosecutor's asking a witness a question that in effect accuses the witness of prior bad acts or crimes can be improper, *see United States v. Sanchez*, 176 F.3d 1214, 1223-24 (9th Cir. 1999), but improper questioning of a witness by the prosecutor is not always a constitutional violation, *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998). Rather, the relevant inquiry on habeas is that dictated by *Darden*, i.e., whether the prosecutor's behavior so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Id.* In considering whether the questioning deprived the defendant of a fair trial, the witness' testimony should be viewed as a whole to determine the impact of the improper questioning. *Id.*

Here the brief exchange of questions and answers between the prosecutor and Silva concerning the prohibition on contact with other witnesses during trial, including defense counsel's objection to the questioning, covered approximately half a page in the transcript out of more than twenty pages of testimony by Silva. Ex. B at 1178-99, 1187-88. And the ostensible subject of the questions was not the conduct of petitioner, but that of the witness – that the witness had contact with petitioner, in violation of the a purported rule banning such contact. Any implication that petitioner was engaged in witness tampering was subtle at best, if there even was one. To the extent the prosecutor was simply bringing out that the witness had contact with petitioner and that they had an opportunity to coordinate their testimony, the implication was not improper. *See United States v. Owens*, 426 F.3d 800, 805-06 (6th Cir. 2005).

Taking these points into consideration, it is clear as to this issue that the prosecutor's behavior did not so infect the trial with unfairness as to make the resulting conviction a denial of due process. *See Ortiz*, 149 F.3d at 934 (standard).

**III.   Jury Instructions**

In the petition, petitioner contends that there was insufficient evidence to support giving CALJIC 2.04, which instructed the jury that it could infer the defendant's consciousness of guilt if it found that he had attempted to dissuade a witness from testifying or attempted to fabricate evidence. This is purely a state law issue which cannot be the

basis for federal habeas relief, and will be rejected for that reason. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas unavailable for violations of state law or for alleged error in the interpretation or application of state law).

However, in his discussion of this issue in his traverse plaintiff says, in passing and without argument, that the instruction lessened the prosecution's burden of proof. Giving an instruction that has the effect of lessening the prosecution's burden of proof violates due process. *See Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009) (due process requires that instructions not relieve state of its duty to prove each element of crime beyond a reasonable doubt). This claim will be denied because a petitioner cannot raise a claim for the first time in his traverse, *see Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994), and alternatively for the reasons discussed below.

**A.     Legal Standard**

The Due Process Clause of the Fourteenth Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. *In re Winship*, 397 U.S. 358, 364 (1970). This constitutional principle prohibits the state from using evidentiary presumptions in a jury charge that have the effect of relieving the state of its burden of persuasion beyond a reasonable doubt of every essential element of a crime. *See Yates v. Evatt*, 500 U.S. 391, 400-03 (1991).

**B.     Analysis**

The jury instruction in question provides:

> If you find that a defendant attempted to or did persuade a witness to testify falsely or attempted to or did fabricate evidence to be produced at the trial, that conduct may be considered by you as a circumstance tending to show a consciousness of guilt. However, that conduct is not sufficient by itself to prove guilt and its weight and significance, if any, are for you to decide.

CALJIC 2.04.

The court of appeal held that because CALJIC 2.04 only requires an inference of guilt if the jury first finds that there was evidence that the defendant actually "attempted to

or did persuade a witness to testify falsely or attempted to or did fabricate evidence to be produced at the trial," and because the instruction cautions the jury that the inference alone is not sufficient to prove guilt, the instruction does not lessen the prosecution's burden.  Ex. G at  9.  It further held that in this case there was record evidence that witnesses testified falsely and destroyed evidence, as well as evidence that petitioner may have been involved in their decisions to do so.  *Id.*  Under the circumstances, the state court of appeal found "there was no error, and certainly no prejudicial error, in giving the instruction." *Id.*

The first step in analyzing whether an instruction that creates an evidentiary inference violates due process by relieving the State of its burden of proving each element of a crime beyond a reasonable doubt is to determine whether the instruction creates a mandatory presumption or a permissive inference.  *See United States v. Warren*, 25 F.3d 890, 897 (9th Cir. 1994) (analyzing whether jury instruction shifted burden of proof by determining whether inference permissive or mandatory).  "A mandatory presumption tells the jury that it must presume that an element of a crime has been proven if the government proves certain predicate facts."  *Id.*  By contrast, "a permissive inference instruction allows, but does not require, a jury to infer a specified conclusion if the government proves certain predicate facts." *Id.*

The instruction here sets out a permissive inference: if the jury finds that defendant engaged in certain acts, that fact "may" be "considered as a circumstance" tending to show consciousness of guilt, but need not be.  A permissive inference instruction like this one does not shift the burden of proof, which is the claim petitioner mentions in his traverse. *See County Court of Ulster County v. Allen*, 442 U.S. 140, 157 (1979).  His claim therefore is without merit.

Finally, although petitioner does not make this argument, giving a permissive inference instruction may violate due process unless it can be said "'with substantial assurance' that the inferred fact is 'more likely than not to flow from the proved fact on which it is made to depend.'"  *Id. at* 166 n.28  (quoting *Leary v. United States*, 395 U.S. 6, 36 (1969)).  In the case of this instruction, the proved fact would be that petitioner

13

"attempted to or did persuade a witness to testify falsely or attempted to or did fabricate evidence to be produced at the trial," and the inferred fact would be that he was conscious of guilt. The inferred fact here is more likely than not to flow from the proved fact, so there was no *Ulster* due process violation.

### C. Conclusion

Petitioner's contention that the instruction was not supported by the evidence presents only a state law question and thus is without merit as grounds for federal habeas relief. His passing contention that the instruction reduced the prosecution's burden of proof will be denied because it is was raised only in the traverse, which is improper, and because the instruction presents only a permissive inference, which does not reduce the prosecution's burden of proof. Finally, his due process rights were not violated because the inferred fact of the instruction is more likely than not to flow from the proved fact.

## IV. Right to Jury Trial

Finally, petitioner contends that his right to a trial by jury was violated because the sentencing court imposed an upper-term sentence based on aggravating factors not found true by the jury. Respondent argues that this claim is not exhausted and is without merit.

### A. Exhaustion of Claim

#### 1. Legal Standard

As noted above, prisoners in state custody who wish to challenge either the fact or length of their confinement in federal habeas proceedings are first required to exhaust state judicial remedies. 28 U.S.C. § 2254(b)(c); *Rose v. Lundy*, 455 U.S. at 515-16. But, as also noted above, the court may deny even an unexhausted claim on the merits. *See* 28 U.S.C. § 2254(b)(2).

#### 2. Analysis

Petitioner concedes that this claim is not exhausted. However, based upon the court's review of the record as discussed below, petitioner's claim that he was sentenced in violation of his Sixth Amendment right to a jury trial "does not raise even a colorable federal claim," *see Cassett*, 406 F.3d at 623-24, so will be denied even though unexhausted.

14

**B.     Merits of Claim**

    **1.     Legal Standard**

Any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Blakely*, the Supreme Court explained that "the statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington*, 542 U.S. 296, 303 (2004). "[E]xcept for a prior conviction, 'any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt.'" *Cunningham v. California*, 549 U.S. 270, 288 (2007) (quoting *Apprendi*, 530 U.S. at 490). In consequence, the Court held that California's determinate sentencing law, which allocated to judges sole authority to find facts permitting the imposition of an upper term sentence, violated the Sixth Amendment. *Id.* at 293.

    **2.     Analysis**

Petitioner claims that the trial court violated his Sixth Amendment right to trial by jury as set out in *Cunningham*, by imposing an upper term sentence based on facts not tried to and found by a jury. Respondent suggests that the claim, though unexhausted, is futile because petitioner did not receive an upper term sentence, but an indeterminate fifteen-year-to-life base sentence doubled due to a prior conviction, with enhancements for use of a gun and a prior conviction.

A jury found defendant guilty of second degree murder, and it found true allegations that he used a firearm in the commission, causing the death of the victim. Ex. G at 1. Petitioner waived jury trial on the question whether he had suffered the prior conviction. Ex. A at 557. The court found true that petitioner had been convicted of a "strike" felony and subsequently sentenced him to a term of sixty years to life. Ex. G at 1. The components of the sentence imposed by the court were: fifteen years to life doubled as a result of the strike, *see* Cal. Penal Code §§ 190(a), 1170.12(c)(1); a five-year enhancement

for the prior conviction, *see* Cal. Penal Code § 667(a)(1); and an additional term of twenty-five years to life for use of a firearm causing death, *see* Cal. Penal Code § 12022.53(d). *Id.*, n.2.

Petitioner's contention that he was given an upper term sentence is incorrect. The court imposed indeterminate sentence elements under California Penal Code sections 1170.12(c)(1) and 12022.53(d), plus enhancements for a specific number of years under California Penal Code sections 1170.12(c)(1) and 667(a)(1); no portion of petitioner's sentence involved an upper-term sentence. In addition, even if he were not mistaken concerning the nature of his sentence, his contention that he was sentenced based on facts not tried to and found by a jury also is incorrect. The jury found defendant guilty of second degree murder and it also found that petitioner used a firearm in the commission of his crime, causing the death of the victim. Ex. G at 1. These, plus the fact of his prior conviction as to which he waived a jury trial, were all the facts necessary for the sentence that was imposed. Thus, although petitioner has not exhausted the claim, it will be denied. *See* 28 U.S.C. § 2254(b)(2).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  November 6, 2009.

PHYLLIS J. HAMILTON
United States District Judge

P:\PRO-SE\PJH\HC.08\LEE1200.RUL.wpd